# EXHIBIT 2

ELECTRONICALLY FILED
2018 Nov 02 4:07 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE

ERIN SHEPHERD,

      Plaintiff,

vs.                                                              No. $CH$-18-1588

                                                    JURY DEMANDED

SHELBY COUNTY GOVERNMENT,
SHELBY COUNTY SHERIFF'S OFFICE,
and KENNY ROBERSON, individually,

      Defendants.

## COMPLAINT FOR DAMAGES

Plaintiff, **ERIN SHEPHERD**, (hereinafter "Shepherd" "Plaintiff"), by and through undersigned counsel, brings this action and files this Complaint for Employment Discrimination based upon gender/sex for Violation of her Civil Rights against Defendants, SHELBY COUNTY GOVERNMENT ("Shelby County"), SHELBY COUNTY SHERIFF'S OFFICE ("SHELBY COUNTY SHERIFF'S), and KENNY ROBERSON ("Roberson"), (hereinafter collectively "Defendants") and states as follows:

### INTRODUCTORY STATEMENT

1.      This is an action for relief from employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Retaliatory Discharge and/or Wrongful Termination, illegal retaliation for exercising civil rights and the Tennessee Human Rights Act. Specifically, Ms. Shepherd, alleges that she was sexually harassed by her immediate supervisor and then unlawfully terminated from her employment by Defendant Shelby County Government and/or Shelby County Sheriff's Office when she filed a complaint with the employer alleging sexual harassment; that the grounds set forth by the Defendant for termination

are pre-textual.   Ms. Shepherd, formerly a police officer with the Shelby County Sheriff's Department, alleges that she was subjected to sexual harassment, hostile work environment harassment; that she was subjected to severe and pervasive comments and conduct based solely on her being female ("sex"). The actions were such that a reasonable person would consider them hostile and sexual in nature. Ms. Shepherd seeks injunctive relief requiring the Defendant to eliminate the discriminatory practices which presently exist and which have existed for several years. Ms. Shepherd further seeks compensatory and punitive damages for the reprehensible and unlawfully discriminatory treatment which she was subjected to as an employee with the Defendant.

2.      Further, Defendants' conduct is in violation of The Tennessee Public Protection Act, T.C.A. §50-1-304, and the common law cause of action for retaliatory discharge (i.e., *Guy v. Mutual of Omaha* and its progeny).

## PARTIES

3.      Plaintiff, Erin Shepherd, is an adult female citizen of the United States, and at all times material hereto, a resident of Shelby County, Tennessee.

4.      Defendant, Shelby County Government ("Shelby County"), is a political subdivision organized and existing under the laws of the State of Tennessee. The County may be served through its chief executive officer, Mayor Lee Harris, 160 North Main Street, Memphis, Tennessee 38103.

5.      Defendant, Shelby County Sheriff's Office ("Shelby County Sheriff's"), is a political subdivision organized and existing under the laws of the State of Tennessee. The Sheriff's Office may be served through its director, Floyd Bonner Jr., at 201 Poplar Avenue, Suite 902, Memphis, TN 38103, Memphis, Tennessee 38103.

6.      Defendant, Kenny Roberson was employed as a lieutenant for the Shelby County

2

Sheriff's Department at all times pertinent to this action and resides in Memphis, Shelby County, Tennessee.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 3231, in that this action arises under the Constitutional Law of the United States; pursuant to § 1331, 28 U.S.C. § 1343(a)(4), Title II and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§2000(e) *et. seq.;* and the Civil Rights Act of 1866, 42 U.S.C.A. §§1981.

8.     This Court has subject matter jurisdiction pursuant to Tennessee statutory law, the Tennessee Public Protection Act, T.C.A. §50-1-304, the common law causes of action for hostile work environment.

9.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(c) and the Defendants may be found in this Judicial District, as they either reside in or do business in this district, and the facts and circumstances which give rise to the causes of action contained in this Complaint occurred in Shelby County and this Judicial District.

## STATEMENT OF FACTS

10.     Plaintiff Erin Shepherd began her employment as a deputy sheriff with the Shelby County Sheriff's Department in May 2010.  Initially Ms. Shepherd was assigned to the traffic division.

11.     In June 2013 Ms. Shepherd was assigned to a school response team where her immediate supervisor was Lieutenant Kenny Roberson ("Roberson").

12.     In November 2013, Ms. Shepherd was assigned to traffic division however, at that time she was pregnant. Roberson specifically asked that Ms. Shepherd be assigned to him as a data analyst.

13.     Immediately from the time that Ms. Shepherd was assigned to Roberson, she was

subjected to sexual harassment, abuse, and a hostile work environment while performing her assignments by Defendants. The sexual harassment by Roberson was directly because Ms. Shepherd was an attractive female. Further, the sexual harassment was constant, and pervasive, it was also unwelcomed.

14.     Immediately Roberson began commenting on Ms. Shepherd breasts. At that time, Ms. Shepherd was pregnant and Roberson consistently made comments to her about her breasts getting bigger.

15.     Roberson required Ms. Shepherd to ride with him during their shift. Roberson would make a point of driving over speed bumps making Ms. Shepherd's breasts bounce/jiggle and then he would comment as to how he had made her breasts bounce.

16.     While on duty and with Ms. Shepherd riding with him, Roberson stopped by a house which turned out to be his mother's home. Roberson introduced Ms. Shepherd to his mother as his fiancée and then told his mother that Ms. Shepherd was pregnant with his child.

17.     Roberson constantly told Ms. Shepherd that he was close friends with all of the supervisors and that he could have her re-assigned, transferred or terminated anytime he wanted.

18.     Ms. Shepherd's "office" was adjacent to Roberson's office and she was, on a daily basis, basically in the same room with Roberson for her entire shift. Ms. Shepherd personally saw many supervisors and upper level Sheriff employees coming and going through Roberson's office. Ms. Shepherd overheard conversations and laughter between Roberson and other supervisors and upper level Sheriff employees, giving her the impression that Roberson was close friends with the other supervisors and upper-level employees.

19.     Roberson constantly told Ms. Shepherd that no one liked her; that there were many supervisors out to get her terminated; that no one wanted to work with her; and that he was the only reason she was still employed with the sheriff's department.

4

20.     Ms. Shepherd realized that Roberson had great interdepartmental political standing as she was Roberson's personal data analyst, which was not normal, and that Roberson was the only Sheriff Deputy with a personal data analyst.

21.     Roberson knew that Ms. Shepherd was married and intentionally worked toward breaking up Ms. Shepherd's marriage in an attempt to cause the couple to divorce.

22.     Roberson, to show Ms. Shepherd that he directly controlled her employment with the sheriff's department, would have Ms. Shepherd transferred or reassigned to other divisions and then would bring her back. Roberson told Ms. Shepherd that he had her sent to other divisions/departments because she needed to learn her place.

23.     Roberson constantly and repeatedly made comments regarding Ms. Shepherd's body, the size of her breasts, that he could make out the outline of her female genitalia through her pants/jeans, that he wanted to rub her hair all over his body. These comments were not only severe and pervasive but also unwelcome.

24.     Roberson constantly and repeatedly propositioned Ms. Shepherd for sex. These requests were not only severe and pervasive but likewise unwelcome. Roberson's comments and sexual harassment interfered with Ms. Shepherd's ability to do her job.

25.     Ms. Shepherd would not give in to Roberson's request for sex. Roberson in response to Ms. Shepherd turning down his advances, told Ms. Shepherd, numerous times, that if he wanted her gone (terminated) he could have her gone (terminated) at any moment.

26.     Roberson, on far too many times than would be normal, told Ms. Shepherd that he loved her and that she should leave or divorce her husband and move in with him. Further, Roberson told Ms. Shepherd that Ms. Shepherd did not understand just how much he loved her; that he would take care of her; and that they should be together.

27.     Roberson constantly told Ms. Shepherd how much he wanted to have oral sex

5

with her and because they basically shared the same room all day, Ms. Shepherd was sexually harassed nonstop each day that she was assigned to Roberson.

28.    Roberson repeatedly turned conversations to personal sexual conversation involving he and Ms. Shepherd. Roberson repeatedly requested that Ms. Shepherd send him pictures of her in various stages of undress as well as nude. Roberson requested that Ms. Shepherd send him pictures of her naked in bed, in a bathtub/shower, and in just casual poses. These requests were severe and pervasive, unwelcome and constant.

29.    Roberson sent photos of himself, both clothed and shirtless, to Ms. Shepherd. Ms. Shepherd did not request these photos; did not want any pictures of Roberson and repeatedly requested that he stop.

30.    Roberson constantly called Ms. Shepherd on her cell phone during her time off, late at night and on weekends. These phone calls were "face time" phone calls which allowed Roberson to see her as she was at that moment. During the "face time" phone calls, Roberson was either taking a shower, bathing, laying naked in bed or unclothed in some room of his home. Roberson would call Ms. Shepherd when he knew she was in bed, and "face time" with her.

31.    Roberson, during the "face time" conversations constantly commented on Ms. Shepherd's body, repeatedly told her how much he wanted to have oral sex with her, how much he wanted to have sex with her, and that he wanted to "crawl between her big ass titties!"

32.    If Ms. Shepherd did not accept his "face time" phone call then Roberson would yell and scream at her and would tell her that he could have her fired at any moment.

33.    Ms. Shepherd's refusing Roberson's sexual advances always resulted in him becoming angry and threatening her job, yelling at her and this hostile work environment made her scared and feel threatened.

34.    Roberson sexually harassed Ms. Shepherd in many different ways over several

6

years. Included in the acts of sexual harassment by Roberson were during times when Ms. Shepherd would be sitting at a table, Roberson would sit next to her and rub her leg under the table. Roberson, on numerous occasions, would grab Ms. Shepherd's butt when in her presence and, when the opportunity presented itself, he would "get physical" with Ms. Shepherd, by grabbing her, hugging her, placing his hands physically on her person in a sexually aggressive manner.

35.    In July 2015, Ms. Shepherd was physically attacked by Roberson. Roberson grabbed Ms. Shepherd in an aggressive manner and tried to kiss her several times. Ms. Shepherd while struggling to fight off the much bigger Roberson, ended up on her back on the floor, with Roberson on top of her, holding her down. Ms. Shepherd realized at that moment that she could be physically hurt by Roberson. Ms. Shepherd felt threatened, scared and intimidated and she believed that Roberson was going to rape her. Ms. Shepherd sustained bruising and pain from the physical attack by her supervisor Roberson.

36.    Roberson was not successful in raping her at that time as she was eventually able to escape after biting him in the shoulder and escaping. At that time Ms. Shepherd was fearful for her life.

37.    The next day Roberson made a joke of the attempted rape and told Ms. Shepherd that she had "bit the shit out of me".

38.    Following the attempted rape, Roberson continued sexually harassing Ms. Shepherd. Roberson continued to comment as to the size of her breasts, physically grabbing her, constantly asking her to come over and spend the night with him, to move in with him, and continued commenting and pointing out the outline of her genitalia through her pants/jeans.

39.    Roberson created a very hostile work environment on a daily basis by constantly suggesting, requesting, intimidating, on a regular basis, to Ms. Shepherd that she have sex with

him.

40.     Roberson's behavior, sexual comment, advances and harassment were unwelcome. Ms. Shepherd perceived the actions of Roberson to be abusive and hostile.

41.     In July 2016, Ms. Shepherd was involved in a fatal shooting and was placed on paid leave pending the investigation. Ms. Shepherd was on paid leave for approximately 13 months.

42.     During the time that Ms. Shepherd was on paid leave, Roberson continued sexually harassing, contacting, calling, face timing Ms. Shepherd.

43.     Ms. Shepherd and her husband divorced in 2016. Sometime following her divorce, Ms. Shepherd and another female began living together. Roberson knew that Ms. Shepherd was living with another woman and continued to require Ms. Shepherd to "face time" with him. Roberson would call when the two women were in bed and would make comments regarding them allowing him to come over and perform oral sex on them; would comment as to them letting him come and be between their "two big ass titties," and would request them to send him pictures of themselves performing sexually.

44.     Roberson became very angry following Ms. Shepherd's divorce, telling her that she should have moved in with him and not some other female.

45.     On her return, Ms. Shepherd was assigned to Lieutenant Ballard. During this period of time, Ms. Shepherd learned what it was like to have a professional supervisor and how respectful professional supervisors treated their employees.

46.     Shortly after her return, and while working under Lieutenant Ballard, Ms. Shepherd received a letter advising her that she was being reassigned to Roberson.

47.     Ms. Shepherd was fearful of Roberson and called Lieutenant Ballard and asked him how or if there was a way she could avoid being reassigned. During her conversation with

Ballard, Ms. Shepherd told him of some of the sexual harassment by Roberson.

48.    Ms. Shepherd filed sexual harassment charge as to Roberson in October 2017.

49.    Following her charges of sexual harassment, the employer required Ms. Shepherd to submit to Intensive Outpatient Program.

50.    Shelby County Government told Ms. Shepherd that, while investigating her sexual harassment charge, it had determined that she had been under stress and ordered her to undergo counseling and then she was ordered to submit to a mandatory psychological fitness for duty evaluation.

51.    The psychiatric evaluation to determine fitness for duty was in retaliation for Ms. Shepherd's having filed sexual harassment charges against Roberson.

52.    Shelby County Government advised Ms. Shepherd that her charges of sexual harassment were unfounded and no action was taken against Roberson.

53.    In February 2018, Roberson told Ms. Shepherd that everyone knows she was living with a female and "women like her don't last long in the Sheriff's office."

54.    Ms. Shepherd was relieved of duty in May 2018 while a fitness for duty assessment was undertaken to determine her ability to perform the duties of a Sheriff Patrol Officer.

55.    Ms. Shepherd submitted to the psychiatric evaluation, performed by psychologist Neil Aronov, Ph. D. On June 8, 2018, Ms. Shepherd received a letter from Shelby County Sheriff's Office advising her that it had been determined that she cannot perform the essential job functions of a Sheriff Patrol Officer as required and was therefore relieved of duty without pay.

56.    Ms. Shepherd requested copies of her personnel file as well as the medical records of psychologist Neil Aronov from both the employer and Aronov. Both parties have refused to

9

produce the "report" on which her termination was based.

57.     At all times material hereto, Ms. Shepherd was capable of functioning at a high capacity and there exists no legitimate nondiscriminatory reason why she was terminated by the employer. Ms. Shepherd's complaint as to sex discrimination/sexual harassment was the motivating factor in Defendants' decision to terminate her.

58.     At all times, Ms. Shepherd performed all duties assigned to her in a professionally competent manner, faithfully followed all reasonable instructions given to her by her supervisors, and abided by all the rules and regulations of Defendants. Ms. Shepherd was wrongfully terminated on September 6, 2018.

59.     The stated reasons for Ms. Shepherd's termination were illusory and pre-textual.

60.     Ms. Shepherd filed an EEOC charge with the U.S. Equal Employment Opportunity Commission and received a "Right to Sue" letter on August 11, 2018. A copy of the Right to Sue Notice is attached as Exhibit A. Ms. Shepherd has timely filed this lawsuit.

## CAUSES OF ACTION

### COUNT ONE
### SEXUAL HARASSMENT - HOSTIL WORK ENVIRONMENT

61.     Plaintiff re-avers and incorporates paragraphs 1 – 60 above as if fully set forth herein.

62.     The subjection of Ms. Shepherd to disparate treatment and adverse employment actions by defendants in whole or substantial part because of her being female was in violation of Title VII of the Civil Rights Act.

63.     Defendants' violation of Title VII in subjecting Plaintiff to hostile work environment harassment was willful and Ms. Shepherd seeks liquidated damages for each violation.

64.     During the past several years, Defendants have willfully and intentionally violated Title VII.

65.     As a result of Defendants illegal and intentional actions, Ms. Shepherd has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, loss of wages and benefits, humiliation, irreparable loss of enjoyment of life, emotional distress, and loss of job-related benefits as the direct and proximate result of respondent's violations of her civil rights as alleged herein. Ms. Shepherd is reasonably certain to continue to suffer these damages in the future. Ms. Shepherd is entitled to the rights and remedies at law provided by Title VII, 42 U.S.C. § 1981a, including actual damages, compensatory damages, punitive damages, and attorneys' fees.

## COUNT TWO
## SEX DISCRIMINATION TITLE VII

66.     Plaintiff re-avers and incorporates paragraphs 1 - 65 above as if fully set forth herein.

67.     Ms. Shepherd has been the victim of unlawful discriminatory conduct in the workplace. She was unlawfully subjected to disparate treatment and suffered adverse employment actions by defendants on the basis of her sex. These employment actions were unlawful in violation of Title VII, 42 U.S.C. § 2000e-2(a).

68.     As a result of Defendants illegal and intentional actions, Ms. Shepherd has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, loss of wages and benefits, humiliation, irreparable loss of enjoyment of life, emotional distress, and loss of job-related benefits as the direct and proximate result of respondent's violations of her civil rights as alleged herein. Ms. Shepherd is reasonably certain to continue to suffer these damages in the future. Ms. Shepherd is entitled to the rights and

remedies at law provided by Title VII, 42 U.S.C. §1981a, including actual damages, compensatory damages, punitive damages, and attorneys' fees.

## COUNT THREE
## SEX DISCRIMINATION/HARASSMENT
## TENNESSEE HUMAN RIGHTS ACT

69.     Plaintiff re-avers and incorporates paragraphs 1 - 68 above as if fully set forth herein.

70.     The subjection of Ms. Shepherd to disparate treatment and adverse employment actions by defendants on the basis of her sex violated the Tennessee Human Rights Act. T.C.A. § 4-21-101 *et. seq.*

71.     As a result of Defendants illegal and intentional actions, Ms. Shepherd has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, loss of wages and benefits, humiliation, irreparable loss of enjoyment of life, emotional distress, and loss of job-related benefits as the direct and proximate result of respondent's violations of her civil rights as alleged herein. Ms. Shepherd is reasonably certain to continue to suffer these damages in the future. Ms. Shepherd is entitled to the rights and remedies at law provided by the Tennessee Human Rights Act, including actual damages, compensatory damages, treble damages, punitive damages, a civil penalty and attorneys' fees.

72.     Ms. Shepherd seeks all applicable rights and remedies provided by the Tennessee Human Rights Act, including, but not limited to, recovery of actual damages, compensatory damages, treble damages, punitive damages, civil penalties, interest, costs, disbursements and attorneys' fees.

## COUNT FOUR
## SEXUAL HARASSMENT - HOSTIL WORK ENVIRONMENT
## TENNESSEE HUMAN RIGHTS ACT

73.     Plaintiff re-avers and incorporates paragraphs 1 - 72 above as if fully set forth

herein.

74.     The subjection of Ms. Shepherd to disparate treatment and adverse employment actions by defendants in whole or substantial part because of her being female was in violation of Title VII of the Civil Rights Act.

75.     Defendants' violation of Title VII in subjecting Plaintiff to hostile work environment harassment was willful and Ms. Shepherd seeks liquidated damages for each violation.

As a result of Defendants illegal and intentional actions, Ms. Shepherd has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, loss of wages and benefits, humiliation, irreparable loss of enjoyment of life, emotional distress, and loss of job-related benefits as the direct and proximate result of respondent's violations of her civil rights as alleged herein. Ms. Shepherd is reasonably certain to continue to suffer these damages in the future. Ms. Shepherd is entitled to the rights and remedies at law provided by Title VII, 42 U.S.C. § 1981a, including actual damages, compensatory damages, punitive damages, and attorneys' fees.

**COUNT FIVE**
**TITLE VII UNLAWFUL RETALIATION**
**(42 U.S.C. § 2000e, *et. seq.*)**

117.     Plaintiff re-avers and incorporates paragraphs 1 - 116 above as if fully set forth herein.

118.     Defendants committed unlawful employment practices when they retaliated against Ms. Shepherd for her efforts to oppose practices reasonably believed to be prohibited by Title VII, in violation of Title VII, 42 U.S.C. § 2000e-3(a).

119.     As a result of Defendants illegal and intentional actions, Ms. Shepherd has been made to suffer mental anguish and emotional distress, loss of employment and future

employment opportunities, loss of wages and benefits, humiliation, irreparable loss of enjoyment of life, emotional distress, and loss of job-related benefits as the direct and proximate result of respondent's violations of her civil rights as alleged herein. Ms. Shepherd is reasonably certain to continue to suffer these damages in the future. Ms. Shepherd is entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. § 1981a, including actual damages, compensatory damages, punitive damages, and attorneys' fees.

## COUNT SIX
## UNLAWFUL REPRISAL
## TENNESSEE HUMAN RIGHTS

124.    Plaintiff re-avers and incorporates paragraphs 1 - 123 above as if fully set forth herein.

125.    Defendants have committed unfair employment practices when it committed acts of reprisal against Ms. Shepherd for her efforts to oppose practices prohibited by the Tennessee Human Rights Act, in violation of the THRA.

126.    As a result of Defendants illegal and intentional actions, Ms. Shepherd has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, loss of wages and benefits, humiliation, irreparable loss of enjoyment of life, emotional distress, and loss of job-related benefits as the direct and proximate result of respondent's violations of her civil rights as alleged herein. Ms. Shepherd is reasonably certain to continue to suffer these damages in the future. Ms. Shepherd is entitled to the rights and remedies at law provided by the Tennessee Human Rights Act, including actual damages, compensatory damages, punitive damages, and attorneys' fees.

## DAMAGES

Plaintiff seeks injunctive relief to put an end to the unlawful employment practices undertaken by Defendant Shelby County Government and equitable relief to include front pay.

14

Additionally, Plaintiff seeks compensatory damages including lost wages, lost earning capacity, emotional distress, pain and suffering, humiliation and embarrassment. She seeks punitive damages in a sufficient amount to punish and prevent the intentional and reprehensible discriminatory employment practices undertaken with reckless disregard to Ms. Shepherd' federally protected civil rights.

### WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:

A.   That Defendants be served with this Complaint and compelled to Answer within the time prescribed;

B.   Declare that Shelby County Government's acts, conduct, policies and practices are unlawful and violate Title VII and FLSA.

C.   Judgment against Defendants that its violations of Title VII and FLSA were willful;

D.   Awarding Plaintiff liquidated damages in the amount of $400,000.00;

E.   Awarding Plaintiff reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

F.   Awarding Plaintiff pre and post-judgment interests;

G.   Awarding Plaintiff all damages to include back pay and front pay that are available to her under the law;

H.   That the Defendants be permanently enjoined from allowing such discrimination to occur in the future with respect to the treatment of any human being;

I.   That at the hearing of this cause, Plaintiff be awarded such compensatory sums as will fully compensate her for the wrongful acts of Defendants, in an amount to be determined at trial, but not less than $250,000.00. This claim includes but is not limited to claims for back pay, front pay or reinstatement, mental and emotional distress, and embarrassment and humiliation;

J.      That at the hearing of this cause, Plaintiff be awarded such punitive damages as will punish Defendants intentional, malicious, reckless and wanton conduct and serve to deter others similarly situated from engaging in similar illegal conduct, in an amount not to exceed $1,000,000.00.

K.      An order requiring Defendants to preserve all electronically stored information relevant to this lawsuit;

L.      That this Court award Plaintiff all wages and other benefits, including back pay and damages, to fully compensate her for loss of earnings and fringe benefits, plus prejudgment interest, which she would have received but for the discriminatory treatment by Defendants, up to the date she acquired similar employment;

M.      That this Court award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation and embarrassment, and other non-pecuniary losses he has suffered as a result of Defendants' retaliation; and

N.      That this Court award Plaintiff any and all such other and further relief, both general and specific, as the Court deems just and equitable and to which he is entitled at law and equity;

O.      Back pay and prejudgment and post-judgment interest and all the fringe benefits to which she is entitled;

P.      Front pay and benefits to the extent reinstatement is not feasible;

Q.      Compensatory damages for her non-economic injuries in an amount authorized by Title VII;

R.      Punitive damages to punish and deter Defendants from future acts of employment discrimination;

S.    An award of reasonable attorney fees and costs to compensate Plaintiff for having

to prosecute this action against Defendants; and

T.    All other and further legal equitable relief which she may show herself entitled to

under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY.**


HEATON AND MOORE, P.C.


By:  _William C. Sessions_

William C. Sessions, III (TN #15017)
Attorney for Plaintiff
44 North Second Street, Suite 1200
Memphis, Tennessee  38103
Ph.:  (901) 526-7563
File No: WS-51098

ELECTRONICALLY FILED
2018 Nov 02 4:07 PM
CLERK OF COURT

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To   Erin J. Shepherd<br>3115 Long Bridge Lane<br>Lakeland, TN 38002 | From   Memphis District Office<br>1407 Union Avenue<br>Suite 900<br>Memphis, TN 38104 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 490-2018-02963 | Jan L. Mitchell,<br>Intake Supervisor | (901) 544-0081 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Jan Mitchell* for    August 10, 2018

Digitally signed by Jan Mitchell
DN: cn=Jan Mitchell, o=EEOC Memphis
District Office, ou=Records Disclosure,
email=jan.mitchell@eeoc.gov, c=US
Date: 2018.08.10 11:11:41 -05'00'

| Enclosures(s) | DELNER FRANKLIN-THOMAS,<br>District Director | (Date Mailed) |
|---|---|---|

cc:   Kim Koratsky
Deputy County Attorney
SHELBY COUNTY (SHERIFF)
160 N. Main, SUITE 950

Exhibit A

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10* -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request** **within 6 months** **of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as