# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

| | | |
|---|---|---|
| **ERIN SHEPHERD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No.:  2:18-cv-02855-TLP-dkv |
| | ) | |
| **SHELBY COUNTY GOVERNMENT,** | ) | |
| **and SHELBY COUNTY SHERIFF'S OFFICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## SHELBY COUNTY'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant, Shelby County Government ("Shelby County" or "the County"),[1] submits this Memorandum in Support of its Motion for Summary Judgment.

## INTRODUCTION[2]

Plaintiff, Erin Shepherd ("Shepherd"), a former employee of the Shelby County Sheriff's Office, alleges three counts of: 1) sex discrimination; 2) hostile work environment based on her sex; and 3) retaliation against Shelby County.[3]  Specifically, Shepherd alleges she was sexually harassed by her immediate supervisor, and, subsequently, unlawfully terminated due to sex

---

[1] Shelby County Sheriff's Office is not a proper party as it is not a governmental entity.  This Court dismissed Defendant, Kenny Roberson, individually, from the instant lawsuit.

[2] In compliance with Local Rule 56.1(a), Shelby County's Statement of Undisputed Material Facts (hereinafter referred to as "SOF ¶ __") with citations to the record is attached hereto as Exhibit A.

[3] Plaintiff also originally named her former supervisor as an individual Defendant.  The Court granted the individual Defendant's motion to dismiss at the parties' Scheduling Conference held on January 31, 2019.

discrimination and retaliation for reporting the alleged harassment. For multiple reasons, Shelby County is entitled to summary judgment on each claim.

The County is entitled to summary judgment on Plaintiff's **sex discrimination disparate treatment theory** (discharge) and **retaliation claim** because Plaintiff cannot point to any similarly-situated comparator who was treated more favorably than she was in any material matter. Furthermore, even if Plaintiff could establish a *prima facie* case of disparate treatment based on sex, fatal to both her disparate treatment and retaliation claims is the fact that she was separated from employment with Shelby County after a fitness for duty exam ("FFDE") proved her unfit for duty as a law enforcement officer. Plaintiff has not and cannot show this legitimate, non-discriminatory and non-retaliatory reason was pretext for any type of unlawful animus.

Finally, Shelby County is entitled to summary judgment on Plaintiff's **sexual harassment hostile work environment claims** because: 1) she has not alleged any sexual harassment within the applicable limitations periods; 2) she has failed to offer evidence that the alleged harassment was sufficiently severe or pervasive to create a discriminatorily abusive working environment, and 3) there is no basis for holding Shelby County liable.

Shelby County is, therefore, entitled to summary judgment on each of Plaintiff's claims.

<u>**SUMMARY OF UNDISPUTED FACTS**</u>

Plaintiff began her employment with Shelby County as a law enforcement officer in the patrol division in 2010. (SOF at ¶ 10.) Upon hire, Plaintiff received copies of each of Shelby County's policies including, but not limited to the County's sexual harassment policy which specifically prescribes the various channels for reporting harassment allegations. (SOF at ¶5.) On May 17, 2010, Plaintiff acknowledged receipt and her understanding of the policy. *Id.*

In late 2013, Plaintiff informed the County that she was pregnant, and the County

therefore assigned her to a "non-enforcement" position on the Patrol Crime Response Unit ("PCRU") under the supervision of Lt. Kenneth Roberson ("Lt. Roberson"). (SOF ¶ 16.) Plaintiff alleges Lt. Roberson began subjecting her to sexual harassment. (ECF No. 1, ¶ 13.) Plaintiff did not remain in Lt. Roberson's unit long, however, as she took maternity leave only a few months later. (SOF ¶ 17.) Plaintiff returned to the PCRU team in June 2014, where she remained until the County reassigned her to "non-enforcement" after she was involved in an on-the-job car collision. (SOF ¶¶ 19, 22.) Approximately one year later, in September 2015, Plaintiff returned to the PCRU team. (SOF ¶ 23.)

In June 2016, Plaintiff was involved in an on-the-job shooting, resulting in the death of a civilian, after which the County placed her on "non-enforcement" duty under the supervision of Lt. Ballard. (SOF ¶ 24.) Plaintiff was under the supervision of Ballard for approximately one year[4] when in August 2017, she learned she was being reassigned to the PCRU team, under Roberson's supervision. (SOF ¶ 25.) Plaintiff was looking forward to her return to Lt. Roberson's team. *Id.*

Two months later, on October 13, 2017, the same day she was admonished for unprofessional behavior, Plaintiff reported—for the first time—allegations of harassment against Lt. Roberson. (SOF ¶¶ 31-32.) The County immediately began an investigation into Plaintiff's allegations, conducting interviews with Plaintiff (twice), Roberson, Sgt. Doak Smith, Lt. David Ballard ("Ballard"), Captain Terry Tate, Chief Inspector Terry Miller, Assistant Chief Mark Dunbar, and Sgt. Natalie Hillman. (SOF ¶ 38.) After reviewing all information brought forward by Plaintiff, witnesses, and the accused, Shelby County found no substantiation to the allegations of sexual harassment (SOF ¶40.) Nonetheless, Plaintiff's team was disbanded, and Plaintiff and Roberson were assigned to different divisions. (SOF ¶ 41.)

---

[4] During this time, Plaintiff did not have any problems with co-workers or supervisors. (SOF ¶ 24.)

In the weeks following the investigation, Plaintiff was involved in several concerning incidents. (See generally SOF Section G.) She was involved in an on-the-job squad car pursuit on November 17, 2019. (SOF ¶ 42.) Only five days later, Plaintiff was involved in a second on-the-job squad car pursuit during which she sustained injuries resulting in her hospitalization and medical leave from work. (SOF ¶ 43.) While off work for those injuries, Plaintiff became involved in a domestic matter with a neighbor's family. (SOF ¶ 44.)

Following these incidents, at Plaintiff's request, the County referred Plaintiff to Shelby County's Employee Assistance Program ("EAP"). (SOF ¶ 45.) During the course of the treatment, however, Shelby County law enforcement officers responded to a suspicious person call which, ultimately, led to Plaintiff being relieved of duty. (SOF ¶¶ 46-50.) Specifically, when the officers arrived on the scene, Plaintiff was outside her neighbor's residence in a bathrobe, beating on the door, and pulling up a drainage pipe. (SOF ¶ 48, Ex. 12.) At the time, Plaintiff claimed to be looking for evidence. *Id.* As it turns out, Plaintiff was hallucinating. *Id.* In response to the call from the neighbor, and in light of Plaintiff's mental state upon arrival at the scene, the officers transported Plaintiff to Alliance Mental Health Institute for evaluation, took away her weapon, and relieved her of duty. (SOF ¶ 50.)

In response to Plaintiff's involvement in the fatal on-the-job shooting and two on-the-job car pursuits; her involvement in the domestic matter; and her February 17, 2018, hallucination, the County requested that Plaintiff participate in a psychological FFDE. (SOF ¶ 51.) On May 4, 2018, Dr. Neil Aranov ("Dr. Aranov") conducted the FFDE which consisted of document review and an in-person interview. (SOF ¶ 53.) Based on events in Plaintiff's personal and professional life occurring both before and after her allegations of sexual harassment, Dr. Aranov found Plaintiff not fit for duty. (SOF ¶ 54.) Specifically, Dr. Aranov concluded: "Yes, the examinee

has a psychiatric/psychological problem that is impairing her ability to safely perform the essential functions of her position. Limitations may include: impaired reality, confusion, memory lapses, impaired memory, and impaired judgment." (SOF ¶ 54, Ex. 13.)

Thus, based on her documented misconduct and Dr. Aranov's assessment, Shelby County, terminated Plaintiff's employment, effective September 9, 2018. (SOF ¶ 54.) To date, Plaintiff has not taken any steps to challenge or dispute Dr. Aranov's findings that she is, in fact, unfit for duty. (SOF ¶ 56.)

## LEGAL STANDARD

Summary judgment is appropriate for Shelby County because there is no genuine issue of material fact (*i.e.*, those "facts that might affect the outcome of the suit under the governing law"), and those undisputed material facts compel judgment for the County as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this case, no genuine issue of fact exists because no reasonable jury could return a verdict for Plaintiff, even after the Court views the facts and draws reasonable inferences in a light most favorable to Plaintiff, as it is required to do. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Shelby County has met its "initial burden to show a lack of evidence to support [Plaintiff's] case." *Id.* At this point, the burden shifts to Plaintiff, who must convince the Court that a triable issue does exist. *Id.* A "mere scintilla of evidence" is not sufficient to defeat a motion for summary judgment, *id.*, and Plaintiff does not even offer that level of evidence. Moreover, conclusory or speculative testimony cannot defeat a motion for summary judgment. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990). Again, even viewing the facts in this case in the light most favorable to Plaintiff, her claims cannot survive summary judgment.

**LAW AND ARGUMENT**

I.      **Plaintiff's Claims Are Subject to the *McDonnell Douglas* Burden Shifting Frame Work**

Because Plaintiff cannot point to any direct evidence of discrimination or retaliation, Plaintiff's claims are subject to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005) (discrimination); *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009) (retaliation).

Under this framework, Plaintiff first bears the burden of establishing a *prima facie* case of discrimination or retaliation to survive summary judgment. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *Eren v. Mars, Inc.*, 27 F.Supp.3d. 855, 862 (M.D. Tenn. 2014). If Plaintiff makes a *prima facie* showing, Shelby County must offer a legitimate, non-discriminatory reason for the adverse employment action. *Clay v. United Parcel Serv.*, 501 F.3d 695, 704 (6th Cir. 2007); *Johnson v. Kroger Co.*, 319 F.3d 858, 856 (6th Cir. 2003); *Eren v. Mars, Inc.*, 27 F.Supp.3d. 855, 862 (M.D. Tenn. 2014). Once Shelby County presents a legitimate, non-discriminatory reason for its actions, Plaintiff must offer evidence to show Shelby County's proffered reason is pretext for discrimination or Shelby County is entitled to judgment as a matter of law. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Despite these shifting burdens, Plaintiff at all times bears the ultimate burden of persuasion to show Shelby County's alleged conduct was the product of intentional discrimination. *See St. Mary's Honor Society v. Hicks*, 509 U.S. 502, 510-12 (1993).

Plaintiff cannot pass any of these hurdles.

II.      **The Court Should Grant Summary Judgment on Plaintiff's Sex Discrimination Claims Based on Disparate Treatment**

Shelby County is entitled to summary judgment because Plaintiff cannot establish a

*prima facie* case of discrimination.  To establish a *prima facie* case of discrimination, a plaintiff must show (1) she is a member of a protected class, (2) she was subjected to an adverse employment decision; (3) she was qualified for the position, and (4) she was replaced by a person outside the protected class, or treated differently than similarly situated non-protected employees.[5]  The analysis is the same under the THRA.[6]

### A. Plaintiff Failed to Establish A *Prima Facie* Case Because She Has No Evidence Any Similarly Situated Employee Was Treated More Favorably.

Plaintiff cannot identify any similarly situated employees outside her protected class who were not subject to a psychological fitness for duty evaluation based on incidents as serious in nature as those in which Plaintiff was involved.  Furthermore, she cannot point to any officer who Shelby County continued to employee after that individual had been found unfit to safely perform the essential job by an independent forensic psychologist.[7]  Without such evidence, Plaintiff cannot establish a *prima facie* case of discrimination, and Shelby County is entitled to judgment as a matter of law according to all of the applicable case law.

### B. Shelby County Has Established A Legitimate Non-Discriminatory Reason for Plaintiff's Termination Which Plaintiff Cannot Show is Pretext.

Even Assuming Plaintiff could established a *prima facie* case of discrimination, Shelby County has carried its burden of stating a legitimate non-discriminatory reason for the adverse action.  Each and every law enforcement officer employed by Shelby County is held to the same minimum qualifications for employment, which are established by the Tennessee Peace Officer Standards and Training Commission ("the Commission").  TENN. CODE ANN. § 38-8-104.  One

---

[5] *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007); *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991); *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

[6] *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 714 (6th Cir. 2006).

[7] Similarly situated means employees who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992).

such administrative requirement is that officers pass a psychological FFDE.[8]  Furthermore, the rules adopted by the Commission state that "[a] new evaluation shall be required" for an officer "upon the request of the employing agency, for good cause."  Rule 1110-02(1)(j)(1).

Shelby County referred Plaintiff for an additional evaluation based on "good cause."  At the time of the referral, Shelby County was aware that she had (1) suffered the loss of a child; (2) she had shot and killed a suspect in the line of duty, resulting in a civil lawsuit against Plaintiff and the County that is still pending; (3) she had been involved in two vehicular accidents while pursuing suspects, one of which ended with Plaintiff being hospitalized and placed on medical leave; (4) she had interjected herself into a domestic dispute involving her neighbors while she was off duty; (5) she had responded to the traumatic death of a child on the anniversary of her own child's death; and (6) she had been temporarily relieved of duty and required by law enforcement to seek medical attention for an incident in which she was tearing up her neighbor's yard and banging on their front door due to her hallucinations involving a child.

Clinical and Forensic Psychologist, Dr. Aronov, evaluated Plaintiff's fitness for duty, and determined to a reasonable degree of psychological certainty that Plaintiff could not safely perform her job duties due to her "psychiatric/psychological problems."  Dr. Aronov noted that Plaintiff has "multiple major psychiatric diagnoses" and found "it impossible . . . to consider [Plaintiff] fit for duty as a commissioned and armed law enforcement officer at this time."  These medical findings showed that Plaintiff did not meet the minimum qualifications to serve as a member of law enforcement.  Accordingly, Shelby County made the decision to terminate her

---

[8] Administrative rule 1110-02-.03(1)(j) sets forth the requirements for a psychological fitness for duty as follows:

> To qualify, an officer must "[h]ave been certified by a Tennessee Licensed Health Care Provider qualified in the psychiatric or psychological fields as being free from any impairment, as set forth in the current edition of the DSM of the American Psychiatric Association at the time of the examination, that would, in the professional judgment of the examiner, affect the person's ability to perform an essential function of the job, with or without a reasonable accommodation.

employment.

The findings of Dr. Aronov serve as a legitimate non-discriminatory reason for Plaintiff's termination, and Shelby County is entitled to judgment as a matter of law because there is no evidence of record that could possibly show that this reason for her termination is pretext. The Court should dismiss Plaintiff's sex discrimination claims.

## III.     Shelby County is Entitled to Summary Judgment on Plaintiff's Retaliation Claims Because She Cannot Establish Either a *Prima Facie* Case or Show Shelby County's Legitimate Reason For Her Termination Is Pretext

Plaintiff's retaliation claim is also subject to the *McDonnell Douglas* burden-shifting framework as she has no direct evidence of retaliation,[9] meaning she must first establish a *prima facie* case by showing (1) she engaged in protected activity; (2) this exercise of protected rights was known to Shelby County; (3) Shelby County thereafter took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action.[10]

Plaintiff cannot establish a *prima facie* case of retaliation because she has no evidence to show that a causal connection exists between her October 2017 complaint and her separation, which occurred almost a year later.  Indeed, given the numerous intervening events, regarding her emotional issues and conduct, it is obvious there is no causal connection between the complaint and the fitness for duty request that resulted in her termination.  Hence, Shelby County is entitled to judgment as a matter of law.

Furthermore, even if Plaintiff could establish a *prima facie* retaliation claim, Shelby County has articulated a legitimate non-retaliatory justification for the decision.  Indeed, Dr.

---

[9] *Manstra v. Norfolk S. Corp.*, 2012 U.S. Dist. LEXIS 42830, *28 (Retaliation claims under Title VII, 42 U.S.C.S. § 2000e et seq., and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101 et seq., are governed by the same burden-shifting framework as sex-based discrimination claims under Title VII and the THRA.).

[10] *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 260 (6th Cir. 2008).

Aronov and Dr. Avery informed Shelby County that Plaintiff could not safely perform her job duties as law enforcement officer, which served as the basis for its decision to end her employment. The Court should dismiss Plaintiff's retaliation claims because she has no evidence whatsoever to show that the results of the fitness for duty evaluation were merely pretext for retaliation.[11]

## IV. The Court Should Grant Summary Judgment on Plaintiff's Sexual Harassment Hostile Work Environment Claims

Title VII's anti-discrimination provision, prohibiting discrimination based on a person's sex, "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," and thus prohibits conduct which is "sufficiently severe and pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment."[12]

To avoid summary judgment on both her Title VII and THRA sexual harassment claims, Plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with the her work performance by creating an environment that was

---

[11] Plaintiff's bald, self-serving allegations of discrimination and retaliation are insufficient to overcome summary judgment. She can offer no evidence of retaliation other than her own conclusory assertions to rebut the mass of evidence that the County tried to help Plaintiff at every turn, but ultimately, after countless stressing events in Plaintiff's life, the County had legitimate reasons to refer her for a psychological fitness for duty evaluation—which she failed. Thus, Plaintiff cannot show the County discriminated or retaliated against her based on the McDonnell Douglas burden shifting framework. *See Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979) (Plaintiff is not able to avoid summary judgment "with the hope that something can be developed at trial.") (quoting *First Nat'l Bank v. Cities Serv.*, 391 U.S. 253, 289-90 (1968)); *see also Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974) ("[W]here the movant brings forward and supports his motion for summary judgment, his opponent may not rest merely upon his pleadings but rather must come forward to show genuine issues of fact. Mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden.").

[12] 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 & 67 (1986); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct, but failed to take corrective action.[13]

As an initial matter, the only allegation properly considered in this lawsuit is the single allegation of harassment occurring on October 13, 2017. Furthermore, and irrespective of the timeliness deficiency, Plaintiff's claims must fail because she has not satisfied her burden of showing severe and pervasive conduct; nor can she show that Shelby County bears any liability.

**A.    Untimeliness:  Plaintiff Did Not Suffer Any Sexual Harassment Within the Statute of Limitations And She Failed to Timely Assert Her Claims.**

Plaintiff's claims of hostile work environment—sexual harassment under Title VII and the THRA are time barred.

*1.    Shelby County is entitled to summary judgment on Plaintiff's THRA sexual harassment claim because no alleged acts of harassment occurred within the one year statute of limitations.*

All THRA claims must be filed "within one (1) year after the alleged discriminatory practice ceases." TENN. CODE ANN. § 4-21-311(d). This one-year statute of limitations is not tolled by any administrative proceedings conducted by the EEOC. *Id.*

Plaintiff filed this lawsuit on November 2, 2018. The Court should dismiss her THRA hostile work environment claim because Plaintiff did not suffer any alleged sexual harassment from Lt. Roberson during the one year period prior to November 2, 2018. Indeed, Plaintiff's first and only complaint of alleged past harassment occurred on October 13, 2017. After she made this complaint, Plaintiff had no further contact with Roberson whatsoever. Hence, no alleged acts of harassment could have possibly occurred within the applicable statute of limitations.

---

[13] *Lindsey V. Whirlpool Corp.*, 295 Fed. Appx. 758, 765 (6th Cir. 2008) (citing *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008); *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008); *Clay v. UPS*, 501 F.3d 695, 706 (6th Cir. 2007); and *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)).

      2.     *Shelby County is entitled to summary judgment on Plaintiff's Title VII sexual harassment claim because it was also not timely filed.*

First, the law requires a plaintiff to file a charge with the EEOC within "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Only where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief" can the charge "be filed by or on behalf of the person aggrieved within the three hundred days after the alleged unlawful employment practice occurred." *Id.*

Plaintiff filed her charge with the EEOC on August 9, 2018, but she did not take any affirmative steps whatsoever to file a charge with the Tennessee Human Rights Commission. Plaintiff only initiated a charge with EEOC. Hence, the plain language of the statute confirms that the 300 day limit is not applicable to her EEOC charge. *See* Order Granting Motion To Dismiss, *Jones v. Federal Express Corp.*, (No. 2:18-cv-2526-JPM-cgc) (attached hereto as Exhibit B.) Accordingly, Plaintiff would have to allege that Lt. Roberson sexual harassed her on or after February 10, 2018, which was exactly 180 days prior to the date she filed her EEOC charge. It is undisputed that Plaintiff's contact with Roberson had ended long before February 10, 2018. Hence, no alleged acts of harassment could have possibly occurred within the applicable statute of limitations.

In the alternative, even if the Court finds the 300 day limit applicable to her EEOC charge, Plaintiff's sexual harassment claim is still time barred. Since Plaintiff filed her EEOC charge on August 9, 2018, the farthest this Court could possibly look back based on the 300 day time limit is October 13, 2017. This date is significant because it was the last day on which Plaintiff had any contact with Roberson.

On October 13, 2017, Roberson's only contact with Plaintiff occurred during a meeting that took place in his office, which Sgt. Smith attended as a witness. Roberson initiated the meeting to address Plaintiff's inappropriate alcohol-induced behavior at the Hester-Sykes Softball Tournament, and to express his concern about her behavior generally. Sgt. Smith discussed with Plaintiff her behavior on October 11, 2017. Specifically, he explained that continuing to perform CPR on an unresponsive child once an ambulance has arrived is not within her job duties. According to Plaintiff's own testimony, she did not consider this meeting a sexually harassing event or act;[14] rather, the sole reason Plaintiff reported Lt. Roberson on this particular day was because she was fearful Lt. Roberson may transfer her out of the specialized unit because of her unprofessional conduct. Plaintiff has no evidence to suggest that the October 13, 2017 meeting occurred and the statements made therein were because of her sex.

Accordingly, Plaintiff has not alleged any sexual harassment within the applicable statute of limitations periods, and Shelby County is entitled to summary judgment on Plaintiff's sexual harassment claims.

**B.      Plaintiff's Allegations Do Not Rise to the Level of Severe or Pervasive as is Required to Establish a *Prima Facie* Case of Sexual Harassment Hostile Work Environment.**

Even if the Court were to consider each of Plaintiff's allegations despite the untimeliness issue, Shelby County is nonetheless entitled to summary judgment on Plaintiff's sexual harassment hostile work environment claims as Plaintiff cannot establish that the alleged harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive.

---

[14] See Pl.'s Dep., pp. 109-117 during which Plaintiff provided an exhaustive list of the treatment she considered sexually harassing from August 2017 to October 2017.

In determining whether a Plaintiff can establish a hostile work environment that violates Title VII or the THRA, the Court must consider "all of the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lindsey*, 295 Fed. Appx. at 766 (*citing Harris*, 510 U.S. at 23). Furthermore, the Supreme Court has continuously held that in order to be actionable, the hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Lindsey*, 295 Fed. Appx. at 766 (*citing Faragher*, 524 U.S. at 788).

      1.      *Under the totality of the circumstances, a reasonable person would not consider Plaintiff's working environment sexually hostile or abusive.*

Plaintiff's testimony regarding alleged sexual harassment is set forth in Paragraphs 35 through 37 of Shelby County's SOF attached hereto.

Even assuming that Roberson said and did all of the things Plaintiff accused him of saying and doing, Plaintiff simply cannot prove she was subjected to sexual harassment that was severe or pervasive enough to create an objectively hostile environment.

First, Title VII protects only against harassment based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). It does not protect against general harassment, regardless of how severe or pervasive it may be. Accordingly, the following allegations of harassment, taken as true, are not protected:

- in 2015, Roberson told Plaintiff she was moved to patrol because she was insubordinate;
- around September 2015, Plaintiff loaned Roberson a fertilizer which he refused to return;
- Roberson talked down to Plaintiff; Roberson cussed at Plaintiff;
- Roberson threatened to move Plaintiff;
- Roberson told Plaintiff other supervisors did not like her and wanted to move her; and

- on October 13, 2017, Roberson called Plaintiff into his office to discuss her behavior.[15]

Of all the alleged incidents of which Plaintiff complains, few are even remotely sexual in nature: while working with L.t Roberson from November 2013 to March 2014, he made comments about Plaintiff's breasts; 5-10 times during the past three to four years, he face-timed Plaintiff, asking to see her naked during some calls; Lt. Roberson once stated he wished he could get in bed with Plaintiff and her girlfriend; he once stated he wished Plaintiff would marry him; sometime around end of 2015, Plaintiff handed Lt. Roberson her phone to show him a funny picture, and he continued scrolling until he found photos of her in a state of undress; he constantly called and texted Plaintiff;[16] and during the October 13, 2017 meeting, Lt. Roberson told Plaintiff people were not happy about her homosexual relationship.[17]

Furthermore, all but the alleged physical altercation occurring at Lt. Roberson's home were verbal in nature, and do not appear to have been more than "mere offensive utterance[s]."[18] The Sixth Circuit has declined to find a hostile work environment in cases involving far more egregious allegations. Indeed, the following Sixth Circuit cases are instructive:

- In *Clark v. UPS*, the Sixth Circuit concluded that routinely telling sexual jokes in front of plaintiff, twice placing his vibrating pager against her upper thigh and asking if it "felt

---

[15] Plaintiff's allegations are analogous to those in the following cases in which the court found plaintiff failed to show severe or pervasive harassment. *See, e.g., Akers*, 338 F.3d at 499 (holding that plaintiff could not show severe or pervasive harassment by demonstrating that a supervisor ignored her, encouraged her co-workers to do the same, criticized her work, and withheld her mail); *Lindsay v. Pizza Hut of Am.*, 2003 WL 244826, at *3 (6th Cir. Jan. 29, 2003) (holding that a plaintiff could not show severe or pervasive harassment by demonstrating that a supervisor rolled her eyes at plaintiff, allowed another employee to curse him, and offered to wager $ 50 that he would never be a manager); *Willey v. Slater*, 20 Fed. Appx. 404, 406 (6th Cir. 2001) (holding that plaintiff could not show severe or pervasive harassment by demonstrating that a supervisor treated him coldly or with hostility but without some inflammatory incident); *Barnes*, 366 F. Supp, 2d at 617-18 (holding that plaintiff could not show severe or pervasive harassment by demonstrating that a supervisor told her to leave the yard after his shift, intimidated and overly supervised him, changed his shift, issued him an improper warning letter, pointed his finger in plaintiff's face and yelled at him, denied him the right to use the bathroom at work, and pushed him in the chest).

[16] Plaintiff, however, testified that she does not have any of the text messages; nor did she attempt to save any text messages. (SOF ¶ 37.)

[17] Notably, Plaintiff also alleged Roberson introduced her to his mother as his fiancé. She testified, however, that this did not offend her. *Id.*

[18] Plaintiff testified that this incident was the only physical interaction she had with Roberson. *Id.*

good," and once grabbing the back of her overalls trying to look down them, all over a period of two-and-a-half years, constituted only "isolated incidents" that did not rise to the level of creating a hostile work environment.[19]

- In *Stacy v. Shoney's, Inc.*, the Sixth Circuit found that a hostile work environment was not shown where, over the course of two months, a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house.[20]

- In *Black v. Zaring Homes*, reversing the lower court's jury verdict, the Sixth Circuit found the conduct was not objectively severe and pervasive where harasser: made repeated sexual jokes; looked plaintiff up and down, smiled, and said there's "Nothing I like more in the morning than sticky buns"; suggested land area be named as "Titsville" or "Twin Peaks"; asked plaintiff, "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stated, "Just get the broad to sign it"; and told plaintiff she was "paid great money for a woman."[21]

It is well settled that conduct that is merely offensive but not severe or pervasive does not violate Title VII.[22] Based on this Court's previous interpretation of conduct constituting sexual harassment, Plaintiff cannot prove she was subjected to sexual harassment that was severe or pervasive enough to create an objectively hostile environment. Shelby County is, therefore, entitled to summary judgment on Plaintiff's sexual harassment hostile work environment claims.

  2. *Considering the totality of the circumstances, Plaintiff herself did not consider her working environment sexually hostile or abusive.*

Plaintiff did not suffer severe and pervasive sexual harassment. Plaintiff's work performance was unaffected by the alleged harassment; in 29 total therapy sessions with Dr. Gordon and Dr. Cohen, Plaintiff never once mentioned sexual harassment; after almost a year away from Lt. Roberson, Plaintiff expressed her desire to return to his unit; and finally, Plaintiff

---

[19] *See Clark v. United Parcel Service, Inc*, 400 F.3d 341, 344–45 & 352 (6th Cir. 2005).

[20] *See Stacy v. Shoney's, Inc.*, 1998 U.S. App. LEXIS 6659 (6th Cir. March 31, 1998) (unpublished).

[21] *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823–24 (6th Cir. 1997)

[22] *Id.* at 826.

did not once complain of sexual harassment that had allegedly been occurring for years, until she thought she was going to be transferred out of Lt. Roberson's unit. These undisputed facts are wholly inconsistent with Plaintiff's claim that she has, for years, suffered severe and pervasive sexual harassment. Thus, even if these incidents could be considered a sexually harassing hostile environment by an objectively reasonable person, Plaintiff's hostile work environment claims nonetheless fail because she cannot show she in fact perceived the environment as hostile or abusive.

First, the very nature of Plaintiff's employment suggests she did not perceive these incidents as creating a hostile or abusive environment. Indeed, the ordinary terms and conditions of Plaintiff's employment on the PCRU team required her to engage in conditions that may be perceived as offensive to most, yet standard to Plaintiff.

Furthermore, Plaintiff's own statements undercut any suggestion that she perceived her environment as hostile or abusive:

- Plaintiff testified that she is not offended by someone having conversations of a sexual nature in her presence.[23]

- Plaintiff testified that she trusted Dr. Gordon, and that during their treatment sessions, she told Dr. Gordon what was bothering her. Yet, the records from the 19 sessions with Gordon do not reflect a single allegation of sexual harassment.

- With regard to the alleged physical altercation: 1) Plaintiff voluntarily went to Lt. Roberson's home to drink beer;[24] 2) during Plaintiff's deposition, she was unable to even identify what year the physical altercation allegedly occurred;[25] and 3) in December 2015, shortly after the physical interaction allegedly occurred, and while still working under the supervision of Roberson, Plaintiff told Dr. Gordon that work was going well.[26] Accordingly, the County is skeptical as to whether the incident occurred at all, much less, whether Plaintiff considered it harassing behavior.

---

[23] Pl.'s Dep. 203:9-12.
[24] Pl.'s Dep. 251:22-25; 252: 10-11.
[25] Pl.'s Dep. 186:2-24. Throughout the line of questioning, Plaintiff states that the physical altercation happened in 2016, 2017, and 2018, while in Plaintiff's internal complaint filed in October 2017, she alleged an altercation occurred between March and September of 2015.
[26] *See* SOF Section C, Medical Records, December 12, 2015 appointment notes.

- Plaintiff told Ballard—notably, after any alleged physical interaction between her and Lt. Roberson would have occurred—, that she was looking forward to returning to the PCRU team, and according to her testimony, she wanted to go back to PCRU.[27]

Finally, as explained, when determining whether a plaintiff can establish hostile work environment that violates Title VII or the THRA, the Court must look to whether the conduct unreasonably interfered with an employee's work performance. *Lindsey*, 295 Fed. Appx. at 766 (*citing Harris*, 510 U.S. at 23). Plaintiff has not and cannot show that Roberson's conduct in any way interfered with her work performance as she consistently received positive performance reviews. Plaintiff even testified that she continued to perform her job at a good level throughout her employment.

Accordingly, even taking each, albeit contradicting, allegation as true, under the totality of the circumstances, Lt. Roberson's conduct was not so severe or pervasive as to create a hostile and intimidating work environment based on her sex. Summary judgment is, therefore, appropriate for Plaintiff's Title VII and THRA claims of hostile work environment as she cannot establish the essential elements of a *prima facie* case.

### C. Shelby County is Not Liable for Any Conduct by Roberson.

In the event the Court finds that Roberson created a sexually harassing hostile work environment for Plaintiff, Shelby County is nevertheless entitled to summary judgment in its favor because Plaintiff unreasonably failed to avail herself of Shelby County's complaint procedures, and when she finally did avail herself, Shelby County took prompt remedial action in response to her complaint.

---

[27] Similarly, in *Clark County Sch. Dist. V. Breeden*, reversing the appellate court, the Supreme Court found, in part, plaintiff failed to show the environment was subjectively hostile where plaintiff alleged that, during a review of job applicant files, male co-workers' reactions to an applicant's sexually explicit comment constituted sexual harassment, yet conceded that the comment did not bother or upset her. Plaintiff's own statements, like those of the plaintiff in *Clark*, negate her claim that she was subject to a sexually harassing hostile work environment.

Because Plaintiff does not allege Lt. Roberson's actions resulted in any tangible employment action, Plaintiff's *prima facie* case fails on the fifth element as long as Shelby County establishes that: (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Shelby County or to avoid harm otherwise.[28]

There is no dispute that Shelby County has promulgated and disseminated a facially effective sexual harassment policy.[29] There is also no dispute that Plaintiff was aware of the policy. Indeed, upon hire, Plaintiff received the policy, and signed a form acknowledging her receipt and understanding of the policy. She testified during her deposition that she was familiar with and had been trained on Shelby County's anti-harassment policies. Despite her awareness of the County's policies, Plaintiff never complained to anyone at the County that she was offended by Roberson's behavior until October 13, 2017—four years after the harassment allegedly began, and two months after returning to Roberson's unit.[30] There is no dispute that Plaintiff was unreasonable in failing to use available preventive and corrective measures to avoid harm. *See Verges v. Shelby County Sheriff's Office*, 721 F. Supp. 2d 730 (W.D. Tenn. 2010) (granting defendant's motion for summary judgment, fining plaintiff's waiting several months to complain unreasonable).

---

[28] Generally, an employer satisfies the first part of this two-part standard when it has promulgated and enforced a sexual harassment policy. *Faragher*, 524 U.S. at 807; *see also Burlington Industries, Inc. v. Ellert*h, 524 U.S. 742, 765 (1998).

[29] [A]n effective [harassment] policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy. *Clark*, 400 F.3d at 349–50 (*citing Varner v. Nat'l Super Markets, Inc.*, 94 F.3d 1209, 1214 (8th Cir. 1996); *Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 541 (10th Cir. 1998); and *Faragher*, 524 U.S. at 808). Shelby County's harassment policy does each.

[30] Coincidentally, Plaintiff first reported harassment the day Lt. Roberson lectured her regarding unprofessional behavior. Indeed, Plaintiff believed she may be transferred to a different (not specialized) unit.

Similarly, in *Thornton v. FedEx*, finding clear evidence in the record of plaintiff's failure to take advantage of FedEx's preventive and corrective measures was unreasonable, the court held FedEx had established its *Ellerth/Faragher* affirmative defense to employer liability, and that the award of summary judgment to FedEx on plaintiff's hostile work environment claim was properly affirmed.[31] Considering the facts and conclusions reached in both *Verges* and *FedEx*, the foregoing undisputed facts alone establish a complete defense to Plaintiff's hostile work environment claims, and Shelby County is therefore entitled to summary judgment.

Furthermore, as soon as Shelby County received notice of Plaintiff's complaint against Lt. Roberson, Shelby County took prompt remedial action. The County initiated an immediate internal investigation, interviewing Plaintiff (twice), Roberson, Sgt. Doak Smith, Ballard, Captain Terry Tate, Chief Inspector Terry Miller, Assistant Chief Mark Dunbar, and Sgt. Natalie Hillman. Roberson denied wrongdoing, and the other employees were unable to corroborate Plaintiff's allegations. Accordingly, there was no evidence to validate Plaintiff's allegations. After complaining, Plaintiff never again worked with Roberson, which shows that the County's harassment policies were effective and that it cannot be held liable.

For each of the above reasons, Shelby County is entitled to summary judgment on both Plaintiff's Title VII and THRA sexual harassment hostile work environments claims as a matter of law.

## CONCLUSION

Shelby County submits it is entitled to a judgment as a matter of law on all Plaintiff's claims. Shelby County requests, therefore, that the Court grant its Motion for Summary Judgment and enter an Order dismissing Plaintiff's claims with prejudice.

---

[31] *Thornton v. FedEx*, 530 F.3d 451 (6th Cir. 2008).

DATED this 8th day of January, 2020.

Respectfully submitted,

s/Louis P. Britt III, Esq.
Louis P. Britt III (TN No. 5613)
Frank L. Day, Jr. (TN No. 025345)
**FORDHARRISON LLP**
1715 Aaron Brenner Dr., Suite 200
Memphis, Tennessee 38120
Telephone: (901) 291-1500
Facsimile: (901) 291-1501
lbritt@fordharrison.com
fday@fordharrison.com

**ATTORNEYS FOR DEFENDANT
SHELBY COUNTY GOVERNMENT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon the following

by electronic means via the Court's CM/ECF system, this 8th day of January, 2020:

William C. Sessions, III (TN BPR: #15017)
HEATON and MOORE, P.C.
44 North Second Street, Suite 1200
Memphis, TN 38103
(901) 526-7563 (tel)
(901) 526-7563 (fax)
wsessions@heatonandmoore.com

**ATTORNEY FOR PLAINTIFF**

s/Louis P. Britt III, Esq.